KUCH AND WATSON, INC., Plaintiff-Appellant, *v.* LORRIN E. WOODMAN, d/b/a BAXTER & WOODMAN *et al.*, Defendants-Appellees.

(No. 72-351;

Second District (1st Division)—June 26, 1975.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, and Dilling & Dilling, of Chicago, for appellant.

Tom L. Yates, of Chicago, and W. Howard Swanson and Donna R. Henderson, both of Waukegan, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

Plaintiff appeals from the dismissal of its amended complaint against defendants Lorrin E. Woodman, doing business as Baxter & Woodman (hereinafter Woodman) and the Village of Gurnee (hereinafter the Village) for failure to state a cause of action.

Plaintiff's amended complaint is in four counts; the first two counts are directed against defendant Woodman and Counts III and IV are directed against defendant Village. In substance, the amended complaint alleges that in 1961 the Village and Woodman entered into a contract whereby Woodman would plan a sewerage system for the Village. In 1966 the prior agreement was supplemented by Woodman, agreeing to furnish certain supervision over the construction of the sewer system. This contract provided that:

> "The Engineers' Supervision is for the purpose of assuring the owner [the Village] that the plans and specifications are being properly executed  *   *   *"

and

> "The owner [the Village] will furnish engineering and inspection service to insure the work being carried out in accordance with the contract  *   *   *."

In 1965 the Village entered into a contract with the Preston Woodall

Company (hereinafter Woodall) whereby Woodall would act as the contractor for the installation of the sewerage system, with Maryland Casualty Co. (hereinafter Maryland) as surety.

The complaint further alleges that Woodall then "purported to satisfactorily install" approximately 60% of the sewerage system with the defendant Woodman and the defendant Village "supervising each stage of construction, and approving the same." In 1967 Woodall was unable to complete the contract and was declared in default by the Village. Maryland, under its bond, then became liable for the completion of the project and in response to an invitation to bid to complete the contract the plaintiff submitted a $612,000 bid which was accepted by Maryland.

The complaint further alleges that in submitting its bid, plaintiff relied upon the contract between the defendants, specifically relying upon the supervision and approval of the work previously performed by Woodall. Plaintiff also alleges that it relied upon "assurances" of the defendant Woodman that the portion previously completed had been completed in a satisfactory manner. Plaintiff further contends that the defendant Woodman is charged with knowledge that the undertaking of work by the plaintiff would require that plaintiff assume complete responsibility for completing the entire sewerage system and that any failure on Woodman's part to have properly supervised the previous work would cause plaintiff financial damage.

Plaintiff then alleges that Woodman failed to perform its duties under its contract with the Village by approving certain detailed substandard work, thereby requiring plaintiff to expend sums to satisfactorily complete the project. In Count I of the complaint plaintiff prays for an award of $210,000 in damages against the defendant Woodman and in Count II plaintiff prays for an award of $100,000 against the defendant Woodman as recovery of lost profits.

Count III, which as noted above is directed against the defendant Village, in addition to realleging much of Count I, also alleges that plaintiff's contract with Maryland incorporated the contract which the Village had entered into with Woodall and that the duties of the Village under the Village-Woodall contract accrued to plaintiff. Plaintiff then alleges that the Village breached its duties under that contract in several detailed respects. Plaintiff then prays for an award of $210,000 damages against the defendant Village and in Count II prays for an award of $100,000 against the defendant Village as a recovery of lost profits.

Plaintiff also filed three contracts, which it entered into with Maryland, which covered various portions of the work to be performed by plaintiff. Each of the contracts contained the following language:

"Whereas, the Contractor has examined the site of the work and

has also inspected that portion of the work under said Contract heretofore performed by Woodall * * * and has offered to assume complete responsibility thereunder * * * including, without limiting, responsibility and liability of all maintenance, guarantee, and corrections or replacement of any defective work heretofore performed under said Contract and to assume such responsibility and complete performance of said Contract * * *."

The contracts also each provided that the specified consideration for each contract was to be:

"* * * full compensation * * * for all costs and expenses incurred and for any loss or damage sustained by reason of the action of the elements, or growing out of the nature of the work, or for any and all unforeseen difficulties or obstructions encountered, and for risks of every description * * *."

On July 21, 1972, the trial court filed its memorandum decision dismissing the complaint against both defendants. In substance, the trial court found that neither defendant could be said to have owed a legal duty to the plaintiff. The trial court further found that amended complaint against the Village sounded in tort and as such was barred by the statute of limitations. Ill. Rev. Stat. 1971, ch. 85, par. 8—101.

■■ The question presented is whether the amended complaint states a cause of action against either defendant. In determining the legal sufficiency of a complaint on a motion to dismiss, all well-pleaded facts are to be taken as true for purposes of the motion, but mere conclusions of the pleader may be disregarded. (See *Chicago Teachers Union v. Board of Education* (1973), 14 Ill.App.3d 154, 301 N.E.2d 833.) In his memorandum opinion, the trial judge noted that plaintiffs' reference in its amended complaint to "assurances" that the prior work had been satisfactorily completed, which assurances were allegedly made to plaintiff by the defendant Woodman, were mere conclusions of the pleader and were, theretofore, to be ignored in ruling on the motion to dismiss. This was correct. Section 31 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 31) requires that in stating a cause of action, substantial averments of fact must be alleged. Merely alleging that "assurances" were made without alleging, for example, when they were made, by whom and to whom they were made, whether they were oral or written or the substance of the alleged assurances, renders the allegation merely conclusory and not well pled and thus may be disregarded in ruling on a motion to dismiss.

A further difficulty is presented in determining what portions of the amended complaint have been well pled. This difficulty is based upon the obvious conflict between the provisions of the contract between

plaintiff and Maryland on the one hand, and certain allegations of the complaint on the other. Whereas the amended complaint alleges that, in submitting its bid, plaintiff relied upon both defendants' supervision and approval of the portion of the project previously completed by Woodall, the contracts which plaintiff voluntarily entered into with Maryland plainly state that plaintiff had examined the work performed by Woodall and agreed to assume complete responsibility and liability for the correction or replacement of any defective work previously performed for the certain specified consideration. The provisions of the contract entered into between plaintiff and Maryland, filed in response to defendants' motion to make the original complaint more definite, control over the contrary and inconsistent allegations of the complaint. *Sangamon County Fair & Agricultural Association v. Stanard* (1956), 9 Ill.2d 267, 137 N.E.2d 487; *Fowley v. Branden* (1954), 4 Ill.2d 355, 122 N.E.2d 559; *DeVito v. Village of Elburn* (1962), 37 Ill.App.2d 59, 184 N.E.2d 890.

*DiVito* involved a factual situation quite similar to the case at bar. In that case, a sewerage system contractor sued the Village and its retained engineers, alleging that they had conspired to conceal the true nature of the subterranean conditions in order to obtain a sewerage system for the Village at a bargain rate. The contract which plaintiff had entered into with the Village, however, stated that plaintiff had carefully examined the worksite and the plans and would not be allowed to claim any additional compensation on account of any unforeseen difficulties. The appellate court affirmed the dismissal of the complaint for failure to state a cause of action by disregarding those allegations of the complaint which were inconsistent with the contract attached thereto and, with respect to the conspiracy allegation, failed to particularize the facts upon which it was based. By reading the complaint in such a manner, it was obvious that no cause of action was thereby stated.

■■ In our view, reading the amended complaint in this case in the same manner as did the court in *DiVito* leads to an identical result. As against the defendant Woodman, the complaint in essence alleges a cause of action in tort—either based upon negligence or upon tortious misrepresentation. With respect to the negligence claim, the complaint not only fails to allege plaintiff's freedom from contributory negligence, but, when we employ those provisions of the plaintiff-Maryland contract which are inconsistent with the complaint, we find the contract specifically alleges that plaintiff assumed the risks inherent in completing the sewerage system. With respect to the claim based upon misrepresentation, the provision of the plaintiff-Maryland contract wherein it stated that the plaintiff had made an independent examination of the

entire worksite negates one requirement of a cause of action for misrepresentation—*i.e.*, reasonable reliance. Those portions of the amended complaint which are directed against the defendant Village and which sound in tort also fail to state a cause of action for the same reasons that apply to the claim against the defendant Woodman. Furthermore, the defendant Village is not liable for any injury caused by an oral promise or misrepresentation of its employee, whether such promise or misrepresentation is negligent or intentional. (See Ill. Rev. Stat. 1971, ch. 85, par. 2—106.) In view of this disposition of those portions of the amended complaint against the defendant Village which sound in tort, we find it unnecessary to rule upon the applicability of section 8—101 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 8—101) and plaintiff's contentions with respect thereto.

■■ Plaintiff's claim against the defendant Village is also based upon a contract theory. While the precise nature of plaintiff's contract theory is difficult to discern from the amended complaint, the gist of plaintiff's contract action appears to be that the Village's duty to supervise construction, stated in the Village-Woodman contract, accrued to plaintiff when plaintiff entered into its contract with Maryland. In its brief to this court, plaintiff argues that by entering into its contract with Maryland, plaintiff became an indemnitor of Maryland, the surety, and when plaintiff was "compelled to satisfy the liability of the surety," plaintiff became subrogated to the rights to which the surety would have been subrogated, citing 83 C.J.S. *Subrogation* § 62, at 714 (1953). We do not dispute the correctness of the proposition stated concerning the rights of a surety's indemnitor. However, not only has plaintiff failed to cite any authority or offer any persuasive argument leading to its conclusion that it, in fact, acquired the status of a surety's indemnitor, but we believe that plaintiff's amended complaint does not raise the issue of indemnification with sufficient specificity to entitle plaintiff to raise this issue on appeal. In addition, whether or not a contract provides for indemnity is a question to be determined from the intent of the parties thereto (see generally *Gay v. S. N. Nielsen Co.* (1958), 18 Ill.App.2d 368, 152 N.E.2d 468), and, in our view, the plaintiff-Maryland contract expresses no such intent. Rather, the clear import of this contract is that plaintiff agreed to correct or replace prior defective work and to complete the project for a specific consideration based upon its independent evaluation of the cost of the work.

■■ Plaintiff also cites *Miller v. DeWitt* (1965), 59 Ill.App.2d 38, 208 N.E.2d 249, *aff'd in part and rev'd in part*, 37 Ill.2d 273, 226 N.E.2d 630, for the proposition that privity of contract is not a prerequisite to the

644

liability of an architect or engineer who improperly supervises construction. However, *Miller* is readily distinguishable from the case at bar as it involved tort liability for negligence and not a contract action as the instant plaintiff is pursuing against the defendant Village. Since plaintiff is not in privity of contract with the defendant Village and cannot otherwise claim to be a beneficiary of the Village's contractual duty to supervise construction of the sewage system, plaintiff's contract theory of recovery against the defendant Village also fails to state a cause of action. See *Vanderlaan v. Berry Construction Co.* (1970), 119 Ill.App.2d 142, 255 N.E.2d 615; *Rozny v. Marnul* (1969), 43 Ill.2d 54, 250 N.E.2d 656.

For the reasons stated above, the judgment of the trial court dismissing plaintiff's amended complaint against the defendants Woodman and Village is hereby affirmed.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.