**INDIANA INSURANCE COMPANY,**
**Plaintiff,**

v.

**MEEKER–MAGNER INSURANCE BROKERS AND CONSULTANTS, INC. and James R. Bauers, Defendants.**

No. 84 C 3194.

United States District Court,
N.D. Illinois, E.D.

Aug. 15, 1984.

Gary L. Starkman, Judith I. Byrd, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiff.

Richard A. Nelson, Randy G. Black, McLennon, Nelson & Nudo, Park Ridge, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Plaintiff Indiana Insurance Co. ("Indiana") sued defendants Meeker-Magner Insurance Brokers and Consultants ("Meeker-Magner") and James R. Bauers ("Bauers") for breach of contract, breach of fiduciary duty, interference with contractual relations, common law fraud and pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*[1] Presently before the Court is Meeker-Magner's motion to dismiss Counts III, IV and V of Indiana's complaint. For reasons set forth below, Meeker-Magner's motion is granted in part and denied in part.

In considering a motion to dismiss, we must take as true all material allegations of fact in the complaint and must read them in the light most favorable to the plaintiff. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977). Furthermore, the motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80

---

**1.** Jurisdiction is asserted pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1331.

(1957). It is with these standards in mind that we turn to the pending motions.

Bauers was the president and sole shareholder of Glenbrook Insurance Agency ("Glenbrook"). An agency agreement dated January 1, 1969, granted Glenbrook authority to sell insurance on behalf of Indiana. Between May 1980 and October 1983, Glenbrook was delinquent in its premium payments to Indiana. Indiana suspended Bauers as an agent in January 1982 and sued Glenbrook for recovery of these premium payments.[2] In August of 1982, Bauers entered into agreements with Meeker-Magner to transfer Glenbrook to Meeker-Magner. When a Meeker-Magner representative contacted Indiana in an effort to obtain a contract to write Glenbrook's insurance policies, Indiana advised the representative that Glenbrook owed outstanding premium payments to Indiana, and that Glenbrook could not be sold. The sale nevertheless proceeded.

In Count III, Indiana alleges that Meeker-Magner intentionally interfered with Indiana's contractual relationship with Bauers and Glenbrook by acquiring assets in which Indiana had a vested interest, including Glenbrook's "book of business." Count IV asserts that Meeker-Magner participated in Bauer's scheme to defraud Indiana by acquiring Glenbrook knowing that Indiana had a lawsuit pending against Bauers for unpaid premiums and by conspiring with Bauers to dispose of all Glenbrook assets which could satisfy a judgment for the amount of premium payments owed to Indiana. Count V asserts violations of RICO, 18 U.S.C. § 1961 et seq.

### Count III

Meeker-Magner claims that Count III fails to state a claim for interference with contractual relations, since there was no valid contract between Indiana and Bauers or Glenbrook with which Meeker-Magner could have interfered. Meeker-Magner maintains that Indiana's January 1982 termination of Bauers as an agent ended any contractual relationship between Indiana and Glenbrook. In addition, Meeker-Magner asserts that nothing in the complaint supports the claim that Meeker-Magner induced Bauers' breach of his contract with Indiana.

Indiana responds by observing that the obligation for unpaid premiums and its interest in the agent's records pending payment continued to be governed by the contract. Indeed, the agreement between Indiana and Glenbrook supports Indiana's position.[3] It adds that by acquiring Glenbrook, Meeker-Magner induced Bauer to breach his contract with Indiana.

The elements of interference with contractual relations include: (1) the existence of a valid and enforceable contract between the plaintiff and a third-party; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third-party caused by the defendant's conduct; and (5) damage to the plaintiff. *J.E.L. Realtors, Inc. v. Mettille*, 111 Ill.App.3d 987, 989, 67 Ill.Dec. 514, 515, 444 N.E.2d 750, 751 (3d Dist.1982). Indiana's complaint adequately sets forth the elements of this tort, and we therefore deny Meeker-Magner's motion to dismiss Count III.

### Count IV

According to Indiana, Bauers and Meeker-Magner conspired to dispose of any of Glenbrook's assets which might satisfy a judgment owed to Indiana. Meeker-Mag-

---

**2.** In a previous action, No. 82 C 1578, judgment was entered against Glenbrook and in favor of Indiana for $136,134.85. That judgment, according to Indiana, is uncollectable due to the fraudulent acts of Bauers and Meeker-Magner.

**3.** Paragraph 2 of the contract provides that
In the event of termination of this Agreement, the agent having promptly accounted for and paid over premiums for which he may be liable, the agent's records, use, and control of expirations shall remain the property of the agent and be left in his undisputed possession; otherwise the records, use, and control of the expirations shall be vested in the company.

ner allegedly acquired Glenbrook knowing that Indiana had filed a lawsuit seeking unpaid premiums due from Glenbrook and failed to rescind the transaction with Glenbrook despite its knowledge that the object of the scheme was to defraud Indiana.

 Fraud has several elements, including (1) a false statement of material fact; (2) knowledge of falsity on the part of the maker; (3) intent to induce the other party to act; (4) reliance by the other party; and (5) damage to the other party as a result of the reliance. *Soules v. General Motors Corp.*, 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980). It is important to note that fraud may also involve the concealment of the truth in addition to false assertion. *In re: Marriage of Wanic*, 112 Ill.App.3d 740, 68 Ill.Dec. 419, 445 N.E.2d 1272 (1st Dist.1983).

 Review of Indiana's complaint indicates that it has not stated a cause of action for fraud.[4] It has not pled, for example, that Meeker-Magner concealed its intention or misrepresented its intentions to acquire Glenbrook's assets. Allegations of a material factual misstatement or conceal-

ment of the truth are absent. Count IV is therefore dismissed.

Accordingly, Meeker-Magner's motion to dismiss is granted in part and denied in part. Counts IV and V[5] are dismissed. It is so ordered.

---

4. The relevant portions of Count IV provide that

43. Bauers embarked upon a scheme to defraud Indiana Insurance by collecting premiums from individuals insured by Indiana Insurance and failing to hold those premiums in trust and remit them to Indiana Insurance in violation of Illinois criminal laws.

44. As part of the scheme to defraud, Bauers, when pressed for payment of these premiums, conspired with Meeker-Magner to dispose of all assets which could satisfy a judgment for the amount owed to Indiana Insurance.

45. Meeker-Magner participated in the scheme to defraud and knowingly adopted and ratified Bauer's criminal breach of fiduciary duty by acquiring Glenbrook, knowing that:

(a) Indiana Insurance had a lawsuit pending against Bauers;

(b) Glenbrook owed a substantial sum representing unpaid premiums to Indiana Insurance; and

(c) Indiana Insurance would not allow Meeker-Magner to write Glenbrook's policies or acquire its interest in the book of business until the premium payments were made.

46. When Meeker-Magner became aware that the object of the scheme was to defraud

Indiana Insurance, it did not seek to rescind the transaction or determine whether Glenbrook had a bond as required by Illinois law to cover the unpaid premiums. Rather, Meeker-Magner caused Bauers to reduce the purchase price for the sale of Glenbrook's assets so that it could benefit from the fraud at less cost to itself.

47. As part of the scheme to defraud, Meeker-Magner and Bauers entered into a series of agreements which purported to be legal contracts but, in fact, were attempts to conceal the fraud by providing the transactions with an aura of legitimacy.

48. As a result of the scheme to defraud, Meeker-Magner received valuable assets in which Indiana Insurance had an interest at distress sale prices, Bauers received $31,850 for for three days work, and the assets of Glenbrook were totally depleted.

49. In this manner, Meeker-Magner and Bauers knowingly and willfully defrauded Indiana Insurance of $131,537.29 in violation of the common law of Illinois.

5. Indiana concedes that absent allegations of a fraudulent scheme, Count V, the RICO claim, cannot stand. Accordingly, Count V is also dismissed. It is so ordered.